**Electronically Filed
Supreme Court
SCWC-19-0000034
20-SEP-2022
09:01 AM
Dkt. 23 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

LUKE J. WARNER, Petitioner/Petitioner-Appellant

vs.

STATE OF HAWAI'I, Respondent/Respondent-Appellee.

_____

SCWC-19-0000034

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000034; CASE NO. 1PR-18-1-000004)

SEPTEMBER 20, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This appeal arises from the denial without a hearing of Luke Warner's ("Warner") Hawai'i Rules of Penal Procedure ("HRPP") Rule 40 (2006) petition for post-conviction relief.  On June 17, 2016, Warner pleaded guilty to multiple drug, theft, and firearm-related offenses.  The Circuit Court of the First

Circuit ("sentencing court") imposed concurrent prison terms, the longest of which was ten years, and various monetary assessments.

Warner later filed the instant pro se HRPP Rule 40 petition in the Circuit Court of the First Circuit ("circuit court"). He challenged the sentencing court's judgment of conviction and sentence on eight grounds. Warner asked the circuit court to end his sentence, to waive all "fines and fees," and for "compensatory judgments" for civil injustices.

The circuit court ruled Warner had waived some of the grounds in his petition and other grounds that requested compensatory relief were unavailable under HRPP Rule 40. The circuit court denied Warner's petition without a hearing and the Intermediate Court of Appeals ("ICA") affirmed.

We hold (1) there was no error in dismissing grounds one through five of Warner's petition without a hearing based on waiver; but (2) based on the reasons discussed below, Warner raised a colorable claim as to the monetary assessments, which constitute fines; and (3) pursuant to HRPP Rule 40(c)(3), grounds six through eight of Warner's petition raised civil claims required to be transferred for disposition under the civil rules.

We therefore vacate in part the ICA's June 9, 2021 judgment on appeal and the circuit court's February 1, 2019 order denying

Warner's petition without a hearing, and remand to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Sentencing court proceedings

#### 1. Indictment and guilty plea

On August 8, 2012, a grand jury charged Warner with four counts of attempted theft in the second degree, three counts of methamphetamine trafficking in the first degree, and one count each of seven other theft, firearm, and drug-related charges.

At a March 23, 2015 change of plea hearing,[1] the State amended down the methamphetamine trafficking charges to second degree charges. In exchange, Warner pleaded guilty to all charges and agreed to serve concurrent terms of incarceration, with the longest term being ten years. Warner's attorney stated he had "gone over [the guilty plea] with [Warner]," and that he and Warner had signed the plea.

Before accepting the plea, the sentencing court conducted a colloquy with Warner. In summary, the court explained the charges, the maximum terms of imprisonment, and that Warner would give up his right to trial, including his right to jury trial, by pleading guilty. The sentencing court also explained the maximum "authorized fines" that could be imposed pursuant to

---

[1] The Honorable Karen S.S. Ahn presided.

3

Hawai'i Revised Statutes (HRS) § 706-640 for the various counts to which he was to plead guilty.  However, the sentencing court did not mention or inform Warner about any other potential monetary assessments.  Warner indicated his mind was clear, he had talked to his lawyer about whether he should go to trial, he was satisfied with his lawyer's advice, and no one was forcing or threatening him to plead guilty.

On June 17, 2016, the sentencing court entered its judgment of conviction and sentence.  Warner was sentenced to concurrent terms of imprisonment; the longest term was ten years and all terms were to run concurrently with any other sentence.[2]  No HRS § 706-640 fines were imposed, but Warner was ordered to pay a $1,420 crime victim compensation fund fee, $1,420 for a drug demand reduction assessment, $7,500 for methamphetamine trafficking restitution and reimbursement, and a fee of up to $500 for a DNA analysis.  The sentencing court did not make findings regarding Warner's ability to pay any of these amounts, whether then or in the future.

---

[2]     In March 2015, Warner was also sentenced to ten-year sentences of imprisonment in federal and Maryland cases.

### 2.  HRPP Rule 40 petition

On February 5, 2018, Warner filed an HRPP Rule 40 petition challenging the sentencing court's judgment on eight grounds: (1) use of evidence obtained pursuant to an unconstitutional search and seizure; (2) use of evidence obtained pursuant to an unlawful arrest; (3) prosecution's failure to disclose to the defendant evidence that is favorable to the defendant; (4) ineffective assistance of counsel; (5) prosecutorial misconduct; (6) "medical and psych decompensation"; (7) "discrimination and reverse racism"; and (8) "accumulative errors."

Warner indicated he was raising these grounds for the first time because his attorneys were allegedly negligent, committed misconduct, and corrupt.  Warner also claimed his health had been poor, he had been preoccupied with other cases, and he had been transferred from several prisons.  Warner asked the circuit court to end his sentence, to waive all fines and fees, and for "compensatory judgments" for his civil injustices, medical decompensation, and financial losses.

In response, the State argued Warner waived grounds one through four because he failed to raise them before his guilty plea, and he did not prove extraordinary circumstances justifying his failure to do so.  With respect to ground four, ineffective assistance of counsel, the State also argued Warner failed to provide specific errors or omissions that resulted in

the withdrawal or substantial impairment of a potentially meritorious defense.  The State argued grounds six through eight, which sought compensatory relief, were beyond the scope of HRPP Rule 40.  The State asserted Warner therefore failed to state a colorable claim.

On February 1, 2019, the circuit court[3] entered its findings of fact, conclusions of law, and order denying the petition without a hearing.  The circuit court concluded (1)(a) Warner waived grounds one through four by failing to raise them before pleading guilty;  and (b) ground four, ineffective assistance of counsel, was also without merit because Warner did not state specific errors or omissions of counsel resulting in the withdrawal or impairment of a meritorious defense; (2) ground five, prosecutorial misconduct, was without merit because none of the named individuals were employed by the State; and (3) grounds six through eight were without merit because HRPP Rule 40 did not provide for compensatory relief.  The circuit court did not address Warner's request to waive the "fines and fees." Warner appealed.

---

[3]    The Honorable Karen T. Nakasone presided.

**B.    ICA proceedings**

**1.    Warner's opening brief**

In summary, Warner alleged his trial counsel committed misconduct by refusing his instructions to challenge inconsistencies in discovery and by "framing" him in his federal case.  Warner claimed HPD officers lied about their first meetings with him, omitted the fact that the first search warrant listed an incorrect address, and lied about a pistol that was sold to Warner.  Warner also asked the ICA to suspend multiple Hawai'i judges "for abusing their discretion to deny [Warner] effective counsel[.]"

**2.    The State's answering brief**

The State maintained Warner's petition failed to state a colorable claim of relief, that he waived grounds one through four, and the relief sought in grounds five through eight was beyond the scope of HRPP Rule 40.

**3.    Summary Disposition Order**

On May 21, 2021, the ICA issued its summary disposition order ("SDO") affirming the circuit court's February 1, 2019 order denying the petition without a hearing.  Warner v. State, CAAP-19-0000034 (App. May 21, 2019) (SDO).  The ICA identified two arguments in Warner's briefs as related to grounds one through four of his petition:  (1) that grand jury witnesses lied; and (2) his trial counsel engaged in various acts of

7

misconduct, including ineffective assistance of counsel. Warner, SDO at 4. The ICA deemed these arguments waived under HRPP Rule 40(a)(3) because Warner could have raised them before his guilty plea and because he had not proven extraordinary circumstances justifying his failure to do so. Warner, SDO at 5, 7. The ICA also determined that, to the extent Warner's petition challenged his guilty plea as not knowingly and intelligently made, Warner had not stated a colorable claim. Warner, SDO at 6.

The ICA also held Warner's briefs presented no discernible argument regarding grounds five through eight of the petition, and any related points of error were waived under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4), (7) (2016).[4] Warner, SDO at 5 n.5. The ICA thus affirmed the circuit court's February 1, 2019 order denying the petition without a hearing. Warner, SDO at 8.

### III. Standards of Review

#### A. Post-conviction relief

We review orders denying HRPP Rule 40 petitions for post-conviction relief de novo. Lewi v. State, 145 Hawai'i 333, 345,

---

[4] HRAP Rule 28(b)(4) provides, in relevant part: "Points not presented [in the opening brief] in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."

HRAP Rule 28(b)(7) provides, in relevant part: "Points not argued may be deemed waived."

8

452 P.3d 330, 342 (2019).  As a general rule, a hearing should be held on a Rule 40 petition if it states a colorable claim; "the question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court." Lewi, 145 Hawai'i at 345, 452 P.3d at 342 (quoting Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994)).

**B.   Pro se litigants**

"A fundamental tenet of Hawai'i law is that '[p]leadings prepared by pro se litigants should be interpreted liberally.'" Waltrip v. TS Enters., Inc., 140 Hawai'i 226, 239, 398 P.3d 815, 828 (2016) (quoting Dupree v. Hiraga, 121 Hawai'i 297, 314, 219 P.3d 1084, 1101 (2009)).  "The underpinnings of this tenet rest on the promotion of equal access to justice — a pro se litigant should not be prevented from proceeding on a pleading or letter to an agency if a reasonable, liberal construction of the document would permit [them] to do so."  Waltrip, 140 Hawai'i at 239, 398 P.3d at 828.

## IV.  Discussion

### A.  Denial of HRPP Rule 40 petition without a hearing

#### 1.  Grounds one through five were properly denied without a hearing

The ICA did not err by holding Warner waived grounds one through four of his petition by failing to raise the arguments before his guilty plea.  Warner, SDO at 5, 7.  See HRPP Rule 40(a)(3).[5]  The ICA also did not err in determining Warner provided no argument as to ground five, and that this issue was also therefore waived pursuant to HRAP Rule 28(b)(4), (7).[6] Warner, SDO at 5 n.5.

#### 2.  Warner asserted a colorable claim regarding monetary assessments

Warner's petition also requested the circuit court "waive all of the fines and fees that were imposed at sentencing[.]"

---

[5]    HRPP Rule 40(a)(3) provides:

> Inapplicability.  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

[6]    HRAP Rule 28(b)(4) requires a concise statement of points of error. HRAP 28(b)(7) provides that points not argued may be deemed waived.

Warner's sentence did not include any HRS § 706-640 fines. In State v. Yamashita, however, we recently held that the crime victim compensation fee and the drug demand reduction assessment constitute criminal fines (and not unconstitutional taxes, as asserted). 151 Hawai'i 390, 400, 515 P.3d 207, 217 (2022). Hence, the additional monetary assessments against Warner are all criminal fines and Warner challenged all the fines in his sentence: $1,420 in crime victim compensation fees, the $1,420 drug demand reduction assessment, $7,500 for methamphetamine trafficking restitution and reimbursement, and the assessment of up to $500 to the DNA registry special fund for the cost of a DNA analysis.

### a. Failure of sentencing court to advise Warner of possible monetary assessments before accepting the change of plea

The sentencing court did not inform Warner of any of the monetary assessments it imposed before accepting Warner's change of plea.

HRPP Rule 11(c)(2) requires that, before accepting a plea, courts ensure defendants understand various matters, including "the maximum penalty provided by law . . . which may be imposed for the offense to which the plea is offered[.]" In State v. Kealoha, we stated:

> [W]e hold that because restitution is part of the "maximum penalty provided by law" and is a direct consequence of conviction, defendants must be appropriately advised and

11

> questioned in open court regarding their understanding of this possibility before a court can accept their pleas.

142 Hawaiʻi 46, 50, 414 P.3d 98, 102 (2018).  We noted that restitution, like imprisonment, fees, and fines, can only be imposed upon conviction, and is a direct consequence of conviction and a part of the sentence.  142 Hawaiʻi at 60-61, 414 P.3d at 112-13.  And pursuant to Yamashita, all of the monetary assessments imposed on Warner constitute fines.  151 Hawaiʻi at 400, 515 P.3d at 217.  Hence, the sentencing court did not fulfill its advisement obligation before accepting Warner's plea.

With respect to a remedy for the failure to advise, Kealoha had requested a resentencing without the restitution, or in the alternative, to allow withdrawal of his guilty plea.  Kealoha, 142 Hawaiʻi at 62, 414 P.3d at 114.  We noted that HRS § 706-646(2) did not allow for resentencing without restitution to the victim being ordered, as restitution in that case was requested by the victim, and was reasonable and verifiable.  142 Hawaiʻi at 62, 414 P.3d at 114.  We also stated:

> Although the circuit court did not conduct a proper colloquy in Kealoha's case, because Kealoha never filed an appropriate motion in the circuit court, we affirm his convictions without prejudice to him filing a HRPP Rule 40 petition in the circuit court.

142 Hawaiʻi at 50, 414 P.3d at 102.

12

In contrast, Warner has already filed this HRPP Rule 40 petition requesting a waiver of all fees and fines.  Thus, Warner stated a colorable claim as to his request that the monetary assessments, which constitute fines, be set aside based on the sentencing court's failure to advise him of them before accepting his plea.  Hence, the ICA erred by determining that, to the extent Warner's petition challenged his guilty plea as not knowingly and intelligently made, Warner had not stated a colorable claim.  Warner, SDO at 6.

   b.    **Failure of sentencing court to address ability to pay**

The sentencing court made no findings regarding Warner's ability to pay before including the monetary assessments as part of the sentence, whether then or in the future.  Whether a defendant has the financial ability to pay is relevant and important.  Subsection (4) of HRS § 706-644[7] allows for unpaid

---

[7]    HRS § 706-644 (2014 & Supp. 2021) provides in relevant part:

> **§706-644 Consequences of nonpayment; imprisonment for contumacious nonpayment; summary collection.** (1) When a defendant is sentenced . . . and the defendant is ordered to pay a fee, fine, or restitution . . . and the defendant defaults in the payment thereof  . . . , the court . . . may require the defendant to show cause why the defendant's default should not be treated as contumacious . . . .  Unless the defendant shows that the defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on the defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that the defendant's default was contumacious and may order the defendant committed until the fee, fine, restitution, or a specified part thereof is paid.
> . . . .

13

fees and fines to be forgiven if the failure to pay is not contumacious. Subsection (3) of HRS § 706-644[8] allows for unpaid fees, fines, or restitution to be converted into prison sentences, but the incarceration of a defendant solely on the basis of inability to pay is unconstitutional. State v. Huggett, 55 Haw. 632, 638, 525 P.2d 1119, 1124 (1974)[9] (citing State v. Tackett, 52 Haw. 601, 483 P.2d 191 (1971)).

We have also held that a statute providing discretion to waive or reduce litigation expenses payable by those charged with crimes requires a determination regarding the defendant's financial ability to pay. Arnold v. Higa, 61 Haw. 203, 206, 600

---

(3) The term of imprisonment for nonpayment of fee, fine, or restitution shall be specified in the order of commitment, and shall not exceed one day for each $250 of the fee or fine, thirty days if the fee or fine was imposed upon conviction of a violation or a petty misdemeanor, or one year in any other case, whichever is the shorter period. A person committed for nonpayment of a fee or fine shall be given credit toward payment of the fee or fine for each day of imprisonment, at the rate of $250 per day.
(4) If it appears that the defendant's default in the payment of a fee, fine, or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment, reducing the amount of each installment, or revoking the fee, fine, or the unpaid portion thereof in whole or in part, or converting the unpaid portion of the fee or fine to community service. A defendant shall not be discharged from an order to pay restitution until the full amount of the restitution has actually been collected or accounted for.
. . . .

[8] See supra note 7.

[9] The United States Supreme Court has also held that courts may not incarcerate a person for nonpayment of a fine or restitution without a hearing on ability to pay and a finding that the failure to pay was willful. Bearden v. Georgia, 461 U.S 660, 667-69 (1983).

P.2d 1383, 1384 (1979) ("[A] determination [of] whether [a defendant] could afford additional litigation expenses should have been made.").

As explained below, Warner therefore also stated a colorable claim regarding his request to waive all monetary penalties because the sentencing court did not address his ability to pay.

### (i) Crime victim compensation fees

The sentencing court had ordered Warner to pay $1,420 in crime victim compensation ("CVC") fees. In Yamashita, we also held that the imposition of CVC fees requires a determination of a defendant's present ability to pay those fees at the time of sentencing. 151 Hawai'i at 398, 515 P.3d at 215. We held the legislative history of HRS §§ 706-605(6)[10] and 351-62.6(a)[11]

---

[10] HRS § 706-605(6) (Supp. 2016) provides:

> The court shall impose a compensation fee upon every person convicted of a criminal offense pursuant to section 351-62.6; provided that the court shall waive the imposition of a compensation fee if it finds that the defendant is unable to pay the compensation fee. When a defendant is ordered to make payments in addition to the compensation fee, payments by the defendant shall be made in the order of priority established in section 706-651.

[11] HRS § 351-62.6(a) (Supp. 2005) provides:

> The court shall impose a compensation fee upon every defendant who has been convicted or who has entered a plea under section 853-1 and who is or will be able to pay the compensation fee. The amount of the compensation fee shall be commensurate with the seriousness of the offense as follows:

15

indicates "the guiding inquiry in imposing a CVC fee is whether the defendant is presently able to pay such a fee." 151 Hawai'i at 398, 515 P.3d at 215 (emphasis in original). We held the CVC fee should not have been imposed because the trial court's findings only "bore on [the defendant's] future, not present, ability to pay the fee." 151 Hawai'i at 399, 515 P.3d at 216. Hence, Yamashita's present inability to pay the CVC fee mandated waiver of the fee. 151 Hawai'i at 399, 515 P.3d at 216.

Here, the sentencing court imposed a $1,420 CVC fee without making any findings as to Warner's present ability to pay. Thus, pursuant to Yamashita, Warner stated a colorable claim as to the CVC fee for this reason also.

#### (ii) Drug demand reduction assessment

The sentencing court also ordered Warner to pay a $1,420 drug demand reduction assessment ("DDRA"). HRS § 706-650[12]

---

> (1) Not less than $105 nor more than $505 for a felony;
> (2) $55 for a misdemeanor; and
> (3) $30 for a petty misdemeanor.
>
> The compensation fee shall be separate from any fine that may be imposed under section 706-640 and shall be in addition to any other disposition under this chapter; provided that the court shall waive the imposition of a compensation fee if the defendant is unable to pay the compensation fee. Moneys from the compensation fees shall be deposited into the crime victim compensation special fund under section 351-62.5.

[12] HRS § 706-650 (Supp. 2016) provides, in relevant part:

> (1) In addition to any disposition authorized by chapter 706 or 853, any person who is:

16

requires a court to impose the DDRA for drug and intoxicating compound convictions.  The statute explicitly allows the court to waive or reduce the amount, however, if the defendant lacks the financial ability to pay all or part of it.  See HRS § 706-650(5).

When a statute provides a court with discretion to waive or reduce expenses that must be paid, the court must make a determination of the defendant's financial ability to pay. Arnold, 61 Haw. at 206, 600 P.2d at 1384.  The sentencing court made no findings regarding Warner's ability to pay the DDRA. Warner therefore also stated a colorable claim regarding the DDRA for this reason.

---

> (a) Convicted of an offense under part IV of chapter 712, except sections 712-1250.5 and 712-1257;
>
> . . . .
>
> shall be ordered to pay a monetary assessment under subsection (2), except as provided under subsection (5).
> (2) Monetary assessments for individuals subject to subsection (1) shall not exceed the following:
>
> . . . .
>
> (b) $2,000 when the offense is a class B felony;
>
> . . . .
>
> (5) If the court determines that the person has the ability to pay the monetary assessment and is eligible for probation or will not be sentenced to incarceration, unless otherwise required by law, the court may order the person to undergo a substance abuse treatment program at the person's expense.  If the person undergoes a substance abuse treatment program at the person's expense, the court may waive or reduce the amount of the monetary assessment.  Upon a showing by the person that the person lacks the financial ability to pay all or part of the monetary assessment, the court may waive or reduce the amount of the monetary assessment.

> **(iii) Methamphetamine trafficking restitution and reimbursement**

The sentencing court also sentenced Warner to pay $7,500 as methamphetamine trafficking restitution and reimbursement ("MTRR"). HRS § 712-1240.9,[13] however, provides courts with discretion regarding whether to order MTRR for methamphetamine trafficking convictions.[14] Again, when a statute provides a court with discretion to waive or reduce expenses that must be paid, the court must make a determination of the defendant's financial ability to pay. Arnold, 61 Haw. at 206, 600 P.2d at

---

[13]   HRS § 712-1240.9 (2014) provided:

> When sentencing a defendant convicted of methamphetamine trafficking pursuant to section 712-1240.7 or 712-1240.8, the court may order restitution or reimbursement to the State or appropriate county government for the cost incurred for any cleanup associated with the manufacture or distribution of methamphetamine and to any other person injured as a result of the manufacture or distribution of methamphetamine.

As discussed, Warner pleaded guilty to three counts amended to methamphetamine trafficking in the second degree, pursuant to HRS § 712-1240.8 (repealed 2016). At the time of sentencing, HRS § 712-1240.8 provided, in relevant part:

> (2) Methamphetamine trafficking in the second degree is a class B felony for which the defendant shall be sentenced as provided in subsection (3).
> (3) Notwithstanding sections 706–620, 706–640, 706–641, 706–660, 706–669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000[.]

[14]   The MTRR is characterized as "restitution or reimbursement" payable to the State or a county. HRS § 706-644(4), supra n.7, treats restitution differently from fees or fines; fees or fines can be forgiven or converted to community service, but restitution cannot be forgiven.

1384. Warner therefore also stated a colorable claim regarding the MTRR on this basis.

#### (iv) DNA analysis assessment

The circuit court also sentenced Warner to pay up to $500 for the actual cost of a DNA analysis ("DAA") to the DNA registry special fund, pursuant to HRS § 706-603.[15] The statute, however, provides that courts "may" reduce the assessment amount if the court finds the defendant "is not and will not be able to pay the full monetary assessment." But upon such a finding, the court "shall instead order the defendant to pay an assessment that the defendant will be able to pay within five years." HRS § 706-603.

No findings were made regarding Warner's ability to pay the DAA at the time of sentencing or within five years thereafter. Therefore, Warner stated a colorable claim regarding the DAA for this reason as well. See Arnold, 61 Haw. at 206, 600 P.2d at 1384.

---

[15]    HRS § 706-603(1) (2014) provides:

> In addition to any disposition authorized by chapter 706 or 853, every defendant convicted of a felony offense shall be ordered to pay a monetary assessment of $500 or the actual cost of the DNA analysis, whichever is less. The court may reduce the monetary assessment if the court finds, based on evidence presented by the defendant and not rebutted by the State, that the defendant is not and will not be able to pay the full monetary assessment and, based on the finding, shall instead order the defendant to pay an assessment that the defendant will be able to pay within five years.

Thus, Warner raised a colorable claim as to his request that the circuit court "waive all fines and fees that were imposed at sentencing." On remand, he is entitled to appointment of counsel and a hearing on this request.[16]

### 3. Grounds six through eight should have been transferred for disposition under the civil rules pursuant to HRPP Rule 40(c)(3)

The circuit court concluded grounds six through eight were without merit because they sought compensatory relief not available under HRPP Rule 40. HRPP Rule 40(c)(3), however, provides:

> If a post-conviction petition alleges neither illegality of judgment nor illegality of post-conviction "custody" or "restraint" but instead alleges a cause of action based on a civil rights statute or other separate cause of action, the court shall treat the pleading as a civil complaint not governed by this rule. However, where a petition seeks relief of the nature provided by this rule and simultaneously pleads a separate claim or claims under a civil rights statute or other separate cause of action, the latter claim or claims shall be ordered transferred by the court for disposition under the civil rules.

(Emphasis added.) Thus, civil claims included in HRPP Rule 40 petitions must be transferred for disposition under civil rules.

---

[16] HRPP Rule 40(f) provides, in relevant part:

> If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

The ICA held that Warner provided no argument as to grounds six through eight of his petition and that those issues were waived pursuant to HRAP Rule 28(b)(4) and (7). Warner, SDO at 5 n.5. Not only are pleadings prepared by pro se litigants to be interpreted liberally, Waltrip, 140 Hawai'i at 239, 398 P.3d at 828, but Warner's petition also actually states civil claims.

In ground six, "Medical and Psych decompensation," Warner alleged, "[d]uring the processing of this case and my cooperation efforts with law enforcement my medical and psych conditions suffered decompensation from healthy stable to serious and potentially critical disorders and injuries."

In ground seven, "Discrimination and reverse racism," Warner alleged, "I was targeted and treated with deliberate indifference and corrupt profiling by Hawaii Officials and professionals [in part] because I am Haole and did not pay HPD and Sheriffs protection money. . . ."

In ground eight, "Accumulative errors," Warner alleged "[The pathology of all the above, and then some,]," and said "Please see 'Accumulative Errors: Defendant Petitioner's Annotated List of Facts, Occurrences, Circumstances, Coincidences' with its Exhibits 01 to 14, attached hereto."

Exhibits 01 to 14, in turn, reflected numerous and varied civil claims involving many institutions and individuals.[17]

Warner's petition asked the circuit court not only to end his sentence, but also to evaluate his "civil injustices, medical decompensation, and material and financial losses, and make compensatory judgements." (Emphasis added.) The petition sought "relief of the nature provided by [HRPP Rule 40]" and pleaded "a separate claim or claims under a . . . separate cause of action[.]" HRPP Rule 40(c)(3). Hence, Warner's claims in grounds six through eight should have been "ordered transferred by the court for disposition under the civil rules." HRPP Rule 40(c)(3); see also Hutch v. State, 107 Hawai'i 411, 420, 114 P.3d 917, 926 (2005). Grounds six through eight should then be treated as any other civil complaint subject to "the civil rules," which include the Hawai'i Rules of Civil Procedure and applicable rules in the Rules of the Circuit Courts of the State of Hawai'i.

## V. Conclusion

For these reasons, we hold (1) there was no error in dismissing grounds one through five of Warner's Rule 40 petition

---

[17]    Grounds six through eight contain myriad complaints, some of which have no connection to Hawai'i, but do include some personal injury and civil rights claims. For example, Warner alleges he suffered a broken left ankle during his arrest in Honolulu, negligent treatment for a leg laceration injury, and inadequate medical treatment while incarcerated. We of course express no opinion as to the merits of any of the complaints.

without a hearing; but (2) Warner raised a colorable claim as to the monetary assessments in his sentence, which constitute fines; and (3) grounds six through eight raised civil claims required to be transferred for disposition under civil rules pursuant to HRPP Rule 40(c)(3).

We therefore vacate in part the ICA's June 9, 2021 judgment on appeal and the circuit court's February 1, 2019 order denying Warner's petition without a hearing, and remand to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Luke J. Warner<br>petitioner pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Stephen K. Tsushima<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |

